IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| BONNIE LEE DWORAK,<br>Plaintiff, | ) )  ) | |
| v. | )  ) | Civil No.  3:15cv446 (JAG) |
| COROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>Defendant. | )  ) )  ) )  | |

## REPORT AND RECOMMENDATIONS

On March 20, 2012, Bonnie Lee Dworak ("Plaintiff") applied for Social Security Disability Benefits ("DIB") under the Social Security Act ("Act"), alleging disability from degenerative disc disease of the spine, facet arthropathy, thoracic and lumbar spondylosis, palpitations/tachycardia and irritable bowel syndrome, with an alleged onset date of May 27, 2011.  The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration.  Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing Plaintiff's residual function capacity ("RFC") and in relying on the legally insufficient testimony of a Vocational Expert ("VE").  (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 11) at 13-18.)  This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties'

cross-motions for summary judgment, rendering the matter now ripe for review.[1]  For the reasons

that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10)

be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED and

that the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

On March 20, 2012, Plaintiff filed an application for DIB, with an alleged onset date of

May 27, 2011. (R. at 158-162.)  The SSA denied this claim initially on May 4, 2012, and again

upon reconsideration on October 1, 2012. (R. at 81-85, 87-89.)  At Plaintiff's written request,

the ALJ held a hearing on April 10, 2014. (R. at 90-91, 115-38.)  On April 24, 2014, the ALJ

issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as

disabled under the Act, because Plaintiff could perform work that existed in significant numbers

in the national economy. (R. at 8-21.)  On June 1, 2015, the Appeals Council denied Plaintiff's

request for review, rendering the ALJ's decision the final decision of the Commissioner subject

to review by this Court. (R. at 1-4.)

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. 20

C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III.   THE ALJ'S DECISION

On April 10, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 22-56.) On April 24, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 11-21.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 11-21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since Plaintiff's alleged onset date. (R. at 13.) At step two, the ALJ determined that Plaintiff suffered the severe impairments of degenerative disc disease of the spine, anxiety disorder and affective disorder. (R. at 13-14.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-15.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as defined by 20 C.F.R. § 404.1567(b), subject to certain limitations. (R. at 15.) Plaintiff could only lift and carry ten pounds frequently and twenty pounds occasionally. (R. at 15.) Plaintiff could sit, stand or walk for six hours in an eight-hour day. (R. at 15.) Plaintiff could frequently handle, finger, feel and push or pull with her hands bilaterally. (R. at 15.) She could only occasionally stoop, crouch, crawl, and climb ladders, ropes or scaffolds. (R. at 15.) Plaintiff could constantly balance and kneel. (R. at 15.) She could only understand, remember and carry

out short, simple instructions. (R. at 15.) Finally, Plaintiff could only occasionally be in contact with supervisors, co-workers and the public. (R. at 15.)

At step four, the ALJ found Plaintiff incapable of performing any past relevant work. (R. at 20.) During step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 20-21.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 21.)

IV.   ANALYSIS

Plaintiff, forty-six years old at the time of this Report and Recommendation, previously worked as a purchasing agent, an office manager and a mattress inspector. (R. at 149, 163.) Plaintiff also worked in data entry/collection and customer service. (R. at 149, 163.) She applied for DIB, alleging disability from degenerative disc disease of the spine, facet arthropathy, thoracic and lumbar spondylosis, palpitations/tachycardia and irritable bowel syndrome, with an alleged onset date of May 27, 2011. (R. at 162.) Plaintiff argues that the ALJ erred in failing to account for all of the effects of Plaintiff's mental impairments in formulating the RFC and in relying on VE testimony that failed to account for all of Plaintiff's limitations. (Pl.'s Mem. at 3.) For the reasons set forth below, the Court finds that the ALJ did not err in his decision.

A. Substantial evidence supports the ALJ's formulation of Plaintiff's RFC.

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC by not accounting for all of the effects of her mental impairments. (Pl.'s Mem. at 13.) Specifically, Plaintiff argues that when evaluating her RFC, the ALJ failed to consider Plaintiff's limitations in concentration, persistence or pace. (Pl.'s Mem. at 13; Pl.'s Reply Mem. ("Pl.'s Reply") (ECF No. 13) at 1.) Defendant responds that the ALJ properly evaluated Plaintiff's RFC, because the ALJ explained

how the limitation in concentration, persistence or pace affected Plaintiff's ability to work and substantial evidence supports the ALJ's RFC assessment. (Def.'s Mot. for Summ. J. & Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 12) at 27.)

After step three of the analysis, but before deciding whether the claimant can perform past relevant work in step four, the ALJ must determine the claimant's RFC — the most that the claimant can perform despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.920(e)-(f), 416.945(a)(1). The ALJ must first assess the nature and extent of the claimant's physical and mental limitations, and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b)-(c). The ALJ's RFC assessment must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's credible complaints. 20 C.F.R. §§ 404.1545(a)(3), 404.1545(e). The ALJ uses the RFC assessment to determine if the claimant can perform her past relevant work and if she can adjust to any other work existing in the national economy. 20 C.F.R. § 404.1545(a)(5). When determining whether the claimant could perform other work in the national economy, the ALJ utilizes the testimony of a VE responding to hypothetical questions that incorporate the claimant's RFC. *Mascio*, 780 F.3d at 635. Only when the hypotheticals posed represent all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

With regard to the claimant's mental impairments, if the ALJ finds that the claimant has moderate difficulties in maintaining her concentration, persistence or pace, the ALJ must account for such limitation in the RFC assessment and in his hypothetical to the VE. *Mascio*, 780 F.3d at 638. The ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question [to the VE] to simple, routine tasks or unskilled

6

work." *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).
Instead, the ALJ must do more, because the ability to perform simple tasks differs from the
ability to stay on task, and only the ability to stay on task would account for the claimant's
limitation in concentration, persistence or pace. *Mascio*, 780 F.3d at 638.

Here, the ALJ found that Plaintiff had moderate difficulties with regard to concentration,
persistence or pace. (R. at 15.) In assessing Plaintiff's mental RFC, the ALJ opined that "[d]ue
to her mental impairments, [Plaintiff] can understand, remember and carry out short, simple
instructions." (R. at 15.) The ALJ further opined that Plaintiff could "occasionally be in contact
with supervisors, co-workers and the public." (R. at 15.) Plaintiff argues that the ALJ's RFC
findings fail to account for Plaintiff's limitations in concentration, persistence or pace. (Pl.'s
Reply at 1.) The Court disagrees.

Unlike *Mascio*, the ALJ here did more than restricting Plaintiff to simple, routine tasks or
unskilled work. The ALJ accounted for Plaintiff's ability to "stay on task" by limiting her to
occasional exposure with supervisors, co-workers and the public. *See Winschel*, 631 F.3d at
1180 ("[H]ypothetical questions adequately account for a claimant's limitations in concentration,
persistence, and pace when the questions otherwise implicitly account for these limitations.")[2];
*see also Ford v. Colvin*, 2015 WL 5008962, *3 (E.D.N.C., Aug. 19, 2015) (holding that the ALJ
sufficiently accounted for the claimant's persistence through "no constant change" limitations
and for concentration through the "no loud noise limitation").

Further, the ALJ recounted the record in detail to explain the basis of his conclusions
regarding Plaintiff's psychological limitations and RFC findings. (R. at 16-21.) The ALJ

---

[2]      The Fourth Circuit relied on and quoted *Winschel* in *Mascio* when it held that the ALJ
must do more than restricting a claimant to "simple, routine tasks or unskilled work" to account
for her limitations in concentration, persistence and pace. *Mascio*, 780 F.3d at 638.

explained that Plaintiff's mental limitations did not preclude her from working. (R. at 21.)

Specifically, the ALJ referenced Plaintiff's treatment notes, discussed above, indicating how well

her anxiety, mood and affect had responded to treatment. (R. at 18-20.) The ALJ further

explained how these treatment notes, in addition to Plaintiff's testimony, showed Plaintiff's

ability to function relatively well since her onset date. (R. at 19.) The ALJ noted that Dr.

Douglas A. Johnson indicated in June 2012 that Plaintiff had normal mood. (R. at 18.)

Additionally, the ALJ cited Dr. Alla Lerner-Brandon's treatment notes that indicated that

Plaintiff's "mental status examination showed that [she] was fully oriented . . . [and] her affect

was stable and mood-congruent." (R. at 18.) The ALJ discussed Plaintiff's hearing testimony

and her husband's third-party function report, both of which demonstrate Plaintiff's ability to

care for herself and perform daily tasks. (R. at 17, 19.) The ALJ considered Plaintiff's mental

limitations, and he concluded that the record failed to establish that Plaintiff's limitations

precluded her from working. (R. at 21.) Therefore, the Court finds that the ALJ properly

accounted for Plaintiff's mental limitations in his RFC findings.

  Substantial evidence supports the ALJ's RFC determination, beginning with Plaintiff's

medical records. On June 6, 2012, Plaintiff saw Dr. Johnson, an endocrinologist. (R. at 623.) In

addition to a physical examination, Dr. Johnson performed a psychiatric exam. (R. at 625.) Dr.

Johnson's treatment notes indicate that Plaintiff reported no problems with depression or anxiety.

(R. at 625.) Plaintiff returned to Dr. Johnson on May 23, 2013. (R. at 671.) Dr. Johnson again

recorded that Plaintiff's mood and affect were normal, and observed that Plaintiff appeared

pleasant and not in distress. (R. at 673.)

  On August 20, 2013, Plaintiff saw Dr. Alla Lerner-Brandon, a psychiatrist, for depression

and post-traumatic stress disorder. (R. at 641.) Dr. Lerner-Brandon's treatment notes indicate

that Plaintiff reported to having difficulties sorting through her identity as a caretaker, a mother and a wife. (R. at 641.) Dr. Lerner-Brandon prescribed medication to help with her anxiety. (R. at 644.) Dr. Lerner-Brandon observed that Plaintiff was fully oriented and that her affect was stable and mood-congruent. (R. at 643.) Treatment notes indicate that Plaintiff's memory and concentration were adequate. (R. at 643.)

On September 4, 2013, Plaintiff returned to Dr. Lerner-Brandon and indicated that the medication caused her to be less reactive when in a stressful situation and less "snappy," without having any side effects. (R. at 645.) Dr. Lerner-Brandon again observed that Plaintiff's memory and concentration were adequate and that her affect was stable and mood-congruent. (R. at 645.) Dr. Lerner-Brandon continued to note that Plaintiff's thought process was goal-directed, logical and within normal limits. (R. at 645.) On October 18, 2013, Dr. Lerner-Brandon saw Plaintiff again and increased her medication. (R. at 647.) Treatment notes indicate that Dr. Lerner-Brandon's determinations regarding Plaintiff's concentration, memory, mood and affect had not changed. (R. at 647.)

On November 5, 2013, Plaintiff returned to Dr. Lerner-Brandon and reported that the increase in medication had helped her better cope with stress in her life. (R. at 649.) Dr. Lerner-Brandon again described Plaintiff as cooperative, having a stable and mood-congruent affect and with adequate memory and concentration. (R. at 649.) On January 6, 2014, Plaintiff returned to Dr. Lerner-Brandon. (R. at 651.) Plaintiff indicated that her overall mood had been stable, with her depression and anxiety under good control. (R. at 651.) Plaintiff reported that she did not "fly off the handle anymore," and that she could calmly discuss stressful situations without "blowing up." (R. at 651.) Dr. Lerner-Brandon again observed that Plaintiff was cooperative, goal-directed and logical, with adequate memory and concentration. (R. at 651.)

The evaluations by the state agency psychologists also support the ALJ's RFC findings. On May 4, 2012, state psychologist Dr. Stonsa N. Insinna completed a mental RFC assessment. (R. at 57-62.) Dr. Insinna noted that Plaintiff had not reported any problems with concentration, following instructions or interacting with others. (R. at 61.) Plaintiff had not alleged a mental health condition at the time of this RFC assessment, although she had been diagnosed with anxiety. (R. at 61.) Dr. Insinna also noted that subsequent visits with multiple heath care professionals failed to document further treatment for the previously noted anxiety. (R. at 61.) Dr. Insinna further stated that neither Plaintiff nor her husband reported problems with concentration, following instructions or interacting with others. (R. at 61.) Dr. Insinna found that Plaintiff had no limitations regarding restrictions of activities of daily living, maintaining socially appropriate behavior or maintaining concentration, persistence or pace. (R. at 62.)

On October 13, 2012, state psychologist Dr. Alan D. Entin reviewed Plaintiff's treatment records and reached the same determinations. (R. at 74- 79.) Dr. Entin noted that Plaintiff had not presented evidence of a severe mental impairment. (R. at 74.) Dr. Entin found that the evidence presented failed to support any additional functional limitations beyond those presented in Dr. Insinna's initial report. (R. at 74.) Both Dr. Insinna and Dr. Entin determined that despite Plaintiff's limitations, she could perform "a variety of gainful activities." (R. at 62, 75.)

Finally, Plaintiff's own statements support the ALJ's RFC determination. (R. at 26-46, 201-09.) Plaintiff reported that she served on her church council and attended Girl Scout meetings with her daughter every other week. (R. at 34, 205.) Plaintiff cared for her two children and her husband, who suffered a traumatic brain injury after a work accident. (R. at 202.) She also testified to caring for herself by dressing and showering on her own about 95 percent of the time. (R. at 35.) Plaintiff rated her pain at a four to a six on a 10-point scale, but

when she took the pain medication, her pain decreased to a two or three. (R. at 30-31.) Plaintiff

took Prozac for her depression and received treatment from a therapist. (R. at 32.) However, her

impairments had not warranted hospitalization after her alleged onset date of disability. (R. at

19.)

Consequently, taken as a whole, substantial evidence in the record supports the ALJ's

formulation of Plaintiff's RFC.

> B. The ALJ properly performed Step Five of the analysis, because he properly assessed
> Plaintiff's limitations and incorporated them into the hypothetical questions to the
> VE.

Plaintiff argues that the ALJ erred in failing to include all of Plaintiff's mental

impairments in his hypotheticals to the VE. (Pl.'s Mem. at 16.) Specifically, Plaintiff contends

that the ALJ failed to include Plaintiff's limitations in concentration, pace or persistence in the

hypotheticals posed to the VE. (Pl.'s Mem. at 16.) According to Plaintiff, the ALJ erred in

relying on the VE's testimony to conclude that Plaintiff could perform jobs that exist in

significant numbers in the economy, because the VE's testimony was based on incomplete

hypotheticals. (Pl.'s Mem. at 16.) Defendant responds that the limitations in the hypotheticals

posed to the VE were consistent with the ALJ's RFC determination and that the ALJ properly

relied on the VE's testimony. (Def.'s Mem. at 29.)

Here, the ALJ formulated a mental RFC that limited Plaintiff to tasks with short, simple

instructions. (R. at 15.) The ALJ further limited Plaintiff to light work and only occasional

contact with supervisors, co-workers and the public. (R. at 15.) The ALJ included these mental

limitations in the hypotheticals posed to the VE. (R. at 50, 52.) The ALJ asked the VE about a

hypothetical employee that could only understand, remember and carryout short, simple

instructions, and have occasional contact with supervisors, co-workers and the public. (R. at 50,

52.)  The VE testified that such hypothetical person could work as an inspector/grader, a packer and a cleaner.  (R. at 50-51.)  Relying on this testimony, the ALJ found that Plaintiff could perform work that exists in significant numbers in the national economy.  (R. at 21.)  The ALJ did not err in this finding at the fifth step of the evaluation.

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(f), 416.920(f). The Commissioner can carry her burden in the final step with the testimony of a VE.  20 C.F.R. §§ 404.1566(e), 416.966(e).  During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker*, 889 F.2d at 50.  Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  *Walker*, 889 F.2d at 50.  Further, if the RFC findings and the hypothetical questions posed to the VE match, the hypotheticals were "incomplete only if the ALJ failed to account for a relevant factor when determining [Plaintiff's RFC]."  *Mascio*, 780 F.3d at 638.

Plaintiff argues that the hypothetical questions posed to the VE did not accurately reflect Plaintiff's limitations, because the questions only accounted for the limitations that the ALJ found in the RFC determination.  (Pl.'s Mem. at 17.)  However, as discussed above, the ALJ properly accounted for Plaintiff's difficulties in concentration, persistence or pace in his RFC findings.  Having concluded that substantial evidence supports the ALJ's RFC determination, the Court holds that the hypothetical questions posed to the VE adequately reflected Plaintiff's limitations and that the ALJ properly relied on the VE's testimony.  *See Johnson v. Barnhart*,

12

434 F.3d 650, 659 (4th Cir. 2005) (finding that substantial evidence supported the ALJ's

decision when the hypotheticals included all limitations that were supported by the record as a

whole). Accordingly, substantial evidence supports the ALJ's decision that jobs that Plaintiff

can perform jobs that exist in significant numbers in the national economy.

## V.    CONCLUSION

For the reason set forth above, the Court recommends that Plaintiff's Motion for

Summary Judgment (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment

(ECF No. 12) be GREANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable John

A. Gibney and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a de novo review of the determinations contained in the report and such failure**

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

                                                            /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  June 3, 2016

13